# United States District Court
## DISTRICT OF CONNECTICUT

—————————————————————————————X

**MADONNA BADGER,**

    *Plaintiff,*

        *v.*

**CITY OF STAMFORD, ROBERT D. DEMARCO &
ERNEST ORGERA,**

    *Defendants.*

—————————————————————————————X

## PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY

## INTRODUCTION

This is a claim in which the plaintiff seeks redress against the City of Stamford, Connecticut and two individuals, Building Official Robert D. DeMarco and Director of Operations Ernest Orgera, for the deprivation and denial of her Federal Civil Rights. Briefly, the plaintiff's home was involved in a fire on Christmas Day December 25, 2011. As a result of the fire the plaintiff lost her three minor daughters: nine-year-old Lily and her seven-year-old twin sisters, Sarah and Grace; along with her parents, Lomar and Pauline Johnson. On the morning of December 26, 2011, following the fire that claimed five innocent lives, without preserving the critical evidence necessary to conduct a competent objective forensic examination or notifying the plaintiff of their intended actions, the defendants intentionally, arbitrarily and recklessly demolished the plaintiff's home and its remaining contents. Immediately following the demolition and in the absence of exigent circumstances the defendants authorized the seizure and disposal of all the physical evidence from the fire. The defendants' actions were carried out pursuant to one or more established municipal policies. Without any rational basis the

defendants intentionally treated the plaintiff and her property differently than other similarly situated residents of Stamford who sustained property damage following a fire.

## JURISDICTIONAL STATEMENT

The jurisdiction of this Honorable Court is conferred pursuant to 28 U.S.C. § 1343 (a)(3) & 28 U.S.C. § 1331. The plaintiff was denied her civil rights and is without any adequate post deprivation remedy. In this action the plaintiff presents claims arising under the U.S. Const. amend. IV and U.S. Const. amend. XIV through 42 U.S.C. § 1983. The plaintiff also seeks a declaratory determination from this Honorable Court pursuant to 28 U.S.C. § 2201(a) regarding the reasonableness of the seizure effectuated by the defendants.

Pursuant to 28 U.S.C. § 1391 (a) & (b)(1) & (2), venue is proper in this judicial district as the defendants reside in this district and a substantial part of the events giving rise to this claim occurred in this district while the property that is the subject of the action was situated here.

## IDENTIFICATION OF NAMED PARTIES

1.      The plaintiff, Madonna Badger, is an adult individual who at all relevant times was a resident of 2267 Shippan Avenue, Stamford, Connecticut, along with her three minor children: Lily, Sarah and Grace Badger.

2.      Defendant City of Stamford is a Municipal Corporation duly organized and existing under the laws of the State of Connecticut and conducts its activities from the Stamford Government Center located at 888 Washington Blvd., Stamford, Connecticut.

3.      Defendant Robert D. Demarco, on information and belief, was at all relevant times a Connecticut resident and the Chief Building Official for the City of Stamford, empowered and

authorized to carry out the official policies of the City who, in concert with Defendant Ernest Orgera, ordered the demolition of the plaintiff's home and the destruction and unlawful seizure of the physical evidence and property remaining after the demolition.

4.       Defendant Ernest Orgera, on information and belief, was at all relevant times a Connecticut resident and the Director of Operations for the City of Stamford empowered and authorized to formulate and carry out the official policies of the City for the departments within the Office of Operations and who, in concert with Defendant Robert D. Demarco, ordered the demolition of the plaintiff's home and the destruction and unlawful seizure of the physical evidence and property remaining after the demolition.

## IDENTIFICATION OF RENOVATION PARTICIPANTS

5.       Tiberias Construction, Inc. is or was, on information and belief, at all relevant times, a duly organized and existing New York corporation with a principal place of business in the City of New York which was at the time of the events giving rise to this complaint performing renovations at the plaintiff's home then located at 2267 Shippan Avenue, Stamford, Connecticut.

6.       Michael Borcina is or was, on information and belief, at all relevant times, a resident of the State of New York unlicensed to perform construction services in the State of Connecticut who held himself out as a general contractor possessed with the knowledge and skill to perform the duties of a general contractor and who was performing renovations at the plaintiff's home then located at 2267 Shippan Avenue, Stamford, Connecticut.

7.      Michael Foley is or was, on information and belief,  at all relevant times, a resident of the State of New York who held himself out as a general contractor registered in the State of Connecticut possessed with the knowledge and skill to perform the duties of a general contractor who  operated under the trade name of Foley's Fine Carpentry.

8.      Stephen N. Holt is or was, on information and belief, at all relevant times, a resident of the State of Connecticut and a principal in Shoreline Electrical Contracting, LLC, a Connecticut limited liability company, who held himself out as possessing the skill and qualifications to perform and provide electrical services to residential homeowners, including the hardwiring of smoke/fire and carbon monoxide detectors or systems and who performed and rendered such installation services during the renovations at the plaintiff's home then located at  2267 Shippan Avenue, Stamford, Connecticut.

9.      Robert J. Smith is or was, on information and belief, at all relevant times, a resident of the State of Connecticut and a principal in Best Electrical Contracting, LLC, a Connecticut Limited Liability Company with a principal place of business in Trumbull, Connecticut,  who held himself out as possessing the skill and qualifications required to render electrical services to residential homeowners including the wiring of electrical components and who performed and rendered such installation services during renovations at the plaintiff's home then located at 2267 Shippan Avenue, Stamford, Connecticut.

10.     Radoslaw Kucharski is or was, on information and belief, at all relevant times, a resident of the State of New York and a principal of ELPO Electric, Inc., a corporation duly organized and existing under the laws of the State of New York who held himself out as possessing the

skill and qualifications required to perform and provide electrical services to residential homeowners including the wiring of electrical components and who performed and rendered such services during renovations at the plaintiff's home then located at  2267 Shippan Avenue, Stamford, Connecticut.

11.     AMEC Carting LLC, is or was, at all relevant times, a Connecticut Limited Liability Company with a principal place of business in Norwalk, Connecticut that demolished and thereafter removed the remains and contents of the plaintiff's home while it was located at 2267 Shippan Avenue, Stamford, Connecticut at the direction of the defendants without the plaintiff's authorization, approval, or knowledge.

## PRELIMINARY FACTUAL ALLEGATIONS

12.     On or about November 2, 2010, the plaintiff, Madonna Badger, entered into a contract to purchase and as a consequence thereof purchased from its record owner the single family home located at 2267 Shippan Avenue, Fairfield County, Stamford,  Connecticut  which at the time of purchase had been granted a permanent certificate of occupancy from the City of Stamford.

## RENOVATIONS-PERMITTING PROCESS

13.     After acquiring the above described property, the plaintiff elected to have certain renovations performed at the residence and thereafter engaged the services of Michael Borcina and Tiberias Construction, Inc.

14.     Pursuant to Conn. Gen. Stat. § 29-263, a building permit was required in order to commence the renovations that were planned for the home on Shippan Avenue.

15.     Pursuant to Conn. Gen. Stat. § 29-262(a) the State of Connecticut Commissioner of Public Safety is required to establish a uniform building permit application which pursuant to § 29-263 the local building official is charged with administering pursuant to ministerial statutory requirements.

16.     Pursuant to § C5-30-6 of the Stamford Connecticut Code of Ordinances, Defendant Robert D. DeMarco as the Stamford Building Official is responsible for issuing building permits and in that capacity acts under the advice, direction, and instruction of the Director of Operations, Defendant Ernest Orgera.

17.     Pursuant to Conn. Gen. Stat §§ 20-420 & 420(a) individuals or corporations intending to perform construction services in Connecticut are required to be licensed by the Department of Consumer Affairs, and Conn. Gen. Stat. § 29-263 prohibits the issuance of a building permit to any contractor who is not registered as required by law.

18.     Pursuant to Conn. Gen. Stat §§ 20-427 it is unlawful for a person to present or attempt to present as his own another person's certificate of registration.

19.     On or about February 1, 2011, on information and belief, Michael Borcina, an individual not licensed as a registered contractor by the State of Connecticut, obtained a set of uniform building permit application forms from the Stamford Building Inspection Bureau.

20.     On February 1, 2011, in addition to the application fee, the forms that the Stamford Building Inspection Bureau required to process an application for a building permit included: (1). a sign off sheet; (2). two sets of plans drawn to a 1/4 inch scale; (3). an Application; (4). a Workmen's compensation coverage affidavit; and (5). the Property Owner's signed acknowledgement of Stamford Code of Ordinance § 123.5.  **See Exhibit A.: 2**

21.     On or about February 1, 2011,  in conjunction with the application approval process, Michael Borcina submitted, *inter alia*, the following documents to the Stamford Building Inspection Bureau: (1). A sign off sheet; (2). Scaled plans dated 1/26/11; (3). An Application for Building Permit identifying Michael Borcina as Applicant and Michael Foley as Contractor with an Affidavit notarized by the Executive Secretary of the Fire Marshall's Office; (4).  A copy of the Connecticut Home Improvement Contractor's Registration Identification (HIC 0629184) belonging to Mr. Michael Foley; (5). A Worker's  Compensation Coverage Affidavit notarized by the Executive Secretary of the Fire Marshall's Office identifying Michael Borcina as the person intending to act as the General Contractor for the project.  **See Exhibit A.: 3-15**

22.     On information and belief, the application forms submitted by Michael Borcina did not include the required document signed by the plaintiff certifying her acknowledgement of Stamford Code of Ordinance § 123.5 which,  according to the official forms, **"MUST"** be completed prior to the issuance of a building permit.  **See exemplar at Exhibit A.:16-17.**

23.     The official forms submitted by Michael Borcina to obtain the required building permit from the City of Stamford were both incomplete and inconsistent in that they identified two

different individuals as the intended general contractor, one of whom was not licensed by the Department of Consumer Affairs as required by Conn. Gen. Stat § 20-420.

24.     Pursuant to § C5-30-6 of the Stamford Connecticut Code of Ordinances, Defendant Robert D. DeMarco was responsible for issuing building permits in February of 2011 and was prohibited by Conn. Gen. Stat. § 29-263 for reasons of public safety from issuing such a permit to contractors, such as Michael Borcina, who did not have the license mandated by Conn. Gen. Stat §§ 20-420 or 420(a).

25.     On February 4, 2011, the City of Stamford issued building permit number BP-2011-0073 for renovations to be performed at the plaintiff's home. **See Exhibit B.: 19.**

26.     On the original building permit application for the project, the scope of the work for which a permit was sought was described as involving: replacing rails on an existing deck; renovating a kitchen and two bathrooms; adding a closet; replacing three doors and pull down stairs to the attic with an estimated project cost of $205,000.00, however, on information and belief, by the time of the fire on December 25, 2011, the plaintiff had paid Borcina in excess of $500,000.00. **Exhibit A.: 13.**

27.     On or about April 14, 2011, Robert Dean, the architect who drafted the plans utilized for the building permit application, submitted a letter to the Building Inspector's Office on behalf of Mike Borcina of Tiberias Construction, Inc. requesting structural plan changes to allow the conversion of the then-existing rear porch and storage room into the enclosed mudroom space where certain officials allege the deadly fire started. **See Exhibit C.: 21.**

28.     On information and belief, on April 28, 2011, based on the request made on behalf of Borcina, who as a matter of public record was not licensed to render construction services in the State of Connecticut, Defendant Robert D. DeMarco approved the revision to the building permit allowing the "mud room" renovations.  **See Exhibit B.: 19.**

29.     Following the issuance of the initial and revised building permit, Defendant DeMarco's Office granted two permits to perform electrical work in the plaintiff's home. **See Exhibit D.: 25 & E: 28.**

30.     On May 3, 2011, Robert Smith applied for a permit to perform electrical work at the plaintiff's home and described the scope of the work to include: adding recessed lights; outlets; switches, appliances, AC/AH per owner's layout and on May 4, 2011 permit number EP-2011-0544 was granted by Defendant Robert D. DeMarco.  **See Exhibit D.: 25.**

31.     On information and belief, the required acknowledgement of Stamford Code of Ordinance § 123.5, which according to the official forms **"MUST"** be completed prior to the issuance of any permit was omitted in the application process for permit number EP-2011-0544.

32.     On May 16, 2011, Stephen N. Holt applied for a permit to perform electrical work at the plaintiff's home and described the scope of the work to include: wiring for alarm system, smoke detectors, carbon monoxide and motion detectors and on May 17, 2011 permit number EP-2011-0613 was granted by Defendant Robert D. DeMarco.  **See Exhibit E.: 28.**

33.     On information and belief, the required acknowledgement of Stamford Code of Ordinance § 123.5 which according to the official forms **"MUST"** be completed prior to the issuance of any permit was omitted in the application process for permit number EP-2011-0613.

34.     On information and belief, neither the original permit, the April 28, 2011 revision, permit EP-2011-0544 or permit number EP-2011-0613 requested or permitted changes to the electric circuitry or panels in the home's basement and the electrical plan received by the building department on February 4, 2011 specifically stated that "[b]asement electrical to remain without change except to provide heat detector and carbon monoxide detector near boiler."  **See Exhibits B.: 19; D.: 25; E.: 31 & F.: 35.**

## **RENOVATIONS-INSPECTIONS**

35.      On June 1, 2011, an electrical inspector from the City of Stamford performed an inspection of the electrical work being performed under permit number EP-2011-0544 and according to the City Building Bureau records the work passed a "rough" inspection, notwithstanding specific recorded remarks concerning fire/draft stopping issues. Pursuant to § 109.3.8.1 of the Connecticut State Building Code, during required electrical inspections fireblocking is to be complete prior to the concealment of installed wiring and, on information and belief,  the intended purposes of fireblocking is to give occupants in a fire more time to escape and firefighters more protection while fighting fires by helping to prevent the potential catastrophic collapse of the structure.  **See Exhibit G.: 37.**

36.     On information and belief, on the same date that fire/draft stop remarks were noted with respect to the required electrical inspection for the work being performed under permit number

EP-2011-0544, the inspector also noted fire/draft stop issues during the rough inspection for the fire alarm and smoke detector system being installed under permit EP-2011-0613.  **See Exhibit G.: 38.**

37.     On information and belief, a request to inspect the wiring for the fire alarm and smoke detector system being installed under permit EP-2011-0613 was not made until June 14, 2011, however, Building Bureau records indicate that the rough inspection passed on June 1, 2011, notwithstanding "[f]ire/draftstop issues."  **See Exhibit G.: 38.**

38.     On information and belief, prior to the fire of December 25, 2011, Building Bureau Inspectors were aware, on notice, or in the exercise of ordinary prudence, should have been aware that the construction being performed at the plaintiff's home by Michael Borcina and the trade workers he retained exceeded the permitted scope of the building permits and deviated from the plans that were reviewed incident to the approval and issuance of the permits.

39.     On information and belief, on three separate occasions, the work being performed by Michael Borcina at the plaintiff's home failed rough inspections for reasons including deviations from accepted plans and layout changes.  **See Exhibit G.: 36-37.**

40.     On information and belief, Building Bureau Inspectors never notified the plaintiff that her home failed three rough inspections, had noted fire/draft stop issues relating to the electrical work being performed,  or advised the plaintiff that additional inspections were required upon the completion of permitted work.

## RENOVATIONS-FIRE ALARMS & CARBON MONOXIDE DETECTORS

41.     On information and belief, prior to the fire of December 25, 2011, electrician Stephen Holt installed and hardwired eleven (11) smoke alarms and five (5) carbon monoxide detectors in the following areas of the plaintiff's home: basement (one smoke and one carbon monoxide detector); first floor (one smoke and one carbon monoxide detector); second floor (five smoke detectors and two carbon monoxide detectors); and third floor (four smoke detectors and one carbon monoxide detector).  **See Exhibit H.: 40 - 41.**

42.     In September of 2011, during the same period of time that the hard-wired fire alarm system was being installed in the plaintiff's home, one of the tradesman on the project, Fredrick Hartley, Jr. purchased and thereafter provided to carpenter Andrew Grunow several battery operated smoke alarms which Grunow immediately installed onto each floor of the plaintiff's home along with fire extinguishers that he personally purchased.  **See Exhibit I.: 43 & 48.**

43.     To the plaintiff's knowledge, both the battery-operated and hard-wired emergency detection systems were operational prior to the fatal fire of December 25, 2011 and the fire extinguishers remained in place. **See Exhibit Z.: 250.**

44.     On information and belief, prior to the fatal fire and demolition of the plaintiff's home, Robert Smith and Best Electrical Contracting, LLC performed extensive electrical work in the plaintiff's home exceeding the scope of what was authorized under permit number EP-2011-0544 and also had communications with Michael Borcina regarding the failure of certain electrical breakers, the installation of new service panels and the ever changing scope of the work.

45.     On information and belief, commencing in approximately September of 2011 and continuing on diverse dates until at least December 22, 2011, a third electrical worker not licensed in the State of Connecticut, Radoslaw Kucharski of ELPO Electric, Inc., was brought onto the project by Borcina and Tiberias to perform additional electrical work which included, inter alia, energizing new circuit panels in the basement, connecting and tracing electric runs that had previously been pulled by other electrical tradesman on the project and installing multiple outlets, switches and light fixtures.

46.   On information and belief, the Building Bureau under the direction and control of defendant DeMarco and supervision of Defendant Orgera never requested that the plaintiff execute the acknowledgement required by Stamford Code of Ordinance § 123.5 or otherwise advised the plaintiff verbally or in writing that a certificate of approval may be  required after permitted work was complete.

47.     Notwithstanding that the plaintiff was lawfully permitted to reside in her home while renovations were underway since the home had a valid certificate of occupancy, Madonna Badger did not move into the home with her children until all renovations were substantially completed and all necessary safety features, including fire, smoke and carbon monoxide detectors, as well as fire extinguishers, were installed and operational.  **See Exhibit Z.: 250; Exhibit ZA.: 251-252; Exhibit ZB.: 253-254.**

<u>**THE FIRE**</u>

48.     In the early morning hours of December 25, 2011, a fire broke out while all of the occupants in the Shippan Avenue home were asleep and despite the most heroic rescue efforts,

the fire and smoke claimed the lives of nine-year-old Lily Badger and her seven-year-old twin sisters, Sarah and Grace Badger, and Madonna Badger's parents, Lomar and Pauline Johnson.

49.     The fire also caused injuries to the plaintiff as well as property damage.

50.     On information or belief, neither before nor during the fire did the plaintiff or any other occupant of the home become forewarned of the impending or spreading disaster by warnings from the fire protection equipment that had been installed in the home.  At the time of the fire it was well known that national studies conducted by the NFPA had demonstrated that in at least 23% of house fires, smoke alarms were present but had failed to operate for numerous reasons including product failure.

51.     On information and belief, the first 911 emergency call reporting a fire at the plaintiff's home was received by the Stamford Emergency Call Center at approximately 4:52 a.m. on December 25, 2011, resulting in the dispatch of several fire suppression units, with a unit from East Side/Shippan Fire Station 4 arriving first on the scene at approximately 4:58 a.m.  **See Exhibit J.: 51.**

52.     On information and belief, the Office of the Medical Examiner reportedly pronounced the victims dead at 4:51 a.m. on December 25, 2011.

53.     Upon their arrival at the fire scene, members of Unit 4 observed the plaintiff on the roof of the home's second floor, a location to which she had descended after unsuccessfully attempting to gain access to a third floor window to save the lives of her children, as well as a

large volume of fire emanating from the front door, windows on the front and right side of the home, and second floor front windows.  **See Exhibit J.: 53.**

54.     When she reached the outside of her home and while on the roof awaiting the arrival of emergency personnel, the plaintiff heard a vibrating noise that she associated with an electrical surge; subsequent to the fire, a neighbor reported that minutes prior to observing the fire through his second floor window he was awakened from his bed by what sounded like metal trash cans being dragged across the driveway.

55.     While she was on the roof of the home attempting to rescue her children, the plaintiff observed a large mass of sparks originating from the north side of the home where the Connecticut Light and Power utility meter was mounted as well as abnormal electrical activity from what she believed to be the transformers on the poles stationed on Shippan Avenue.

56.     After she was assisted down from the roof by firefighters, the plaintiff was transported by ambulance to the Stamford Hospital, reportedly arriving at approximately 5:57 a.m., without knowing the fate of her parents or three young daughters.

57.     While she was at the Stamford Hospital on the morning of December 25, 2011, the plaintiff was interviewed by both Stamford Fire and Police Investigators and eventually advised of the fate of her family; she remained at the Stamford Hospital into the evening of December 25, 2011 and was accessible to the defendants at all relevant times thereafter.

58.     After the first fire unit from Station 4 arrived on the scene it was joined by additional firefighting, police and rescue units, as well as officials from the Stamford Fire Marshall's Office, with the three alarm fire reportedly being brought under control by 8:00 a.m. and followed thereafter by the difficult task of removing the bodies from the home.  **See Exhibit J.: 51-53.**

## THE FIRE INVESTIGATION

59.     Pursuant to Conn. Gen. Stat. § 29-310, the State Fire Marshall is required to and "shall thoroughly investigate the cause, circumstances and origin of all fires  . . . to which his attention has been called  . . . by reason of which any property has been destroyed or damaged, or any person injured or killed, and shall especially examine and decide as to whether such fire was the result of carelessness, design, an incendiary device or any other criminal act."

60.     On information and belief, the Connecticut State Fire Marshall did not investigate the instant fire in which five deaths occurred on Christmas Day 2011 because it was either not brought to the attention of the State Fire Marshall by the Stamford Fire Marshall's Office or the State Fire Marshall failed to fulfill the mandatory duties of investigation required by Conn. Gen. Stat. § 29-310.

61.     Pursuant to Conn. Gen. Stat. § 29-302, the Local Fire Marshall is required under Conn. Gen. Stat. § 29-311 to investigate the cause and origin of a fire in which property has been damaged or persons have suffered injury or death and is authorized to "prevent the intentional or unintentional destruction of evidence."

62.     On information and belief, on December 25, 2011, Stamford Assistant Fire Marshall (AFM) Robert Sollitto participated in the fire scene investigation; Stamford Deputy Fire Marshalls (SDFMS) Ted Panagiotopoulos and Thomas Brown photographed the scene; and Stamford Assistant Fire Marshall Charles Spaulding interviewed the plaintiff at the Stamford Hospital.

63.     On information and belief, at approximately 4:00 p.m. on December 25, 2011, AFM Sollitto and DFM Thomas Brown entered the basement of the plaintiff's home and photographed what was described as the northwest corner in which the electrical service panels were located and thereafter at approximately 4:30 p.m., proceeded into the house to obtain additional interior photographs.  **See Exhibit K.: 64 - 65 & Exhibit Y.: 228.**

64.     On information and belief, there were three electrical circuit panels located in the basement of the plaintiff's home when it was inspected on December 25, 2011, two of which were new, however; neither electrical permit requested or authorized the installation of new electrical circuit panels in the basement.  **See Exhibit D.: 25; E.: 28 & F.: 34 & Exhibit Y228-230.**

65.     On information and belief, on December 25, 2011, the two new circuit breaker panels were being energized from a run tied-in from the original pre-existing circuit breaker panel in the basement.

66.     On information and belief, the wires, circuit breakers and components inside and above the original pre-existing circuit breaker panel providing the current evidenced more extensive

damage in the photographs taken by fire officials on December 25, 2011 than those areas of the new circuit breaker panels that were photographed. **See Exhibit: Y.: 230; Exhibit YA.: 231-233; Exhibit YB.: 236-237 & Exhibit YC.: 238 - 240.**

67.     On information and belief, on January 18, 2012, Defendant DeMarco was interviewed by the Stamford Police regarding his role in the decision to demolish the plaintiff's home. **See Exhibit  M.: 75.**

68.     On information and belief, on January 18, 2012, Defendant DeMarco told the police that he had a conversation with AFM Sollitto during the afternoon of December 25, 2011 during which Sollitto told him that "the Fire Department was done with the building and that they wanted an electrical inspector to check out the electrical panel at the house on Monday. That once it was checked out they had no further interest in the building." **See Exhibit M.: 75.**

69.     On information and belief, AFM Sollitto prepared a draft and a signed fire investigation report relating to the December 25, 2011 fire, neither of which identifies the date it was prepared. **See Exhibit N.: 78 & 85.**

70.     On information and belief, in his draft report AFM Sollitto described how he and DFM Brown entered the basement to inspect and photograph the plaintiff's home and then stated "[a]fter leaving the fire scene at approximately 1600 hours, Stamford Police Officers Bloomberg, Mann and Rainone remained to maintain scene integrity." **See Exhibit N.: 82.**

71.     On information and belief, in the signed report AFM Sollitto stated that prior to leaving the scene he was approached by Defendant DeMarco and advised by DeMarco that the building

was to be demolished the following morning (December 26, 2011) whereupon Sollitto advised DeMarco that additional investigation needed to be performed in the basement area where the electrical panels were located.  **See Exhibit N.: 93-94.**

72.     On information and belief, neither DeMarco or Sollitto made any reference to the plaintiff's home being in "imminent danger" of collapse on December 25th or 26th, and observed conduct with respect to people entering the building, including the basement,  on both the 25th and 26th, without any shoring or other emergency safety measures is inconsistent with any later claim that the building was in imminent danger of collapse.   **See Exhibit N.: 94; Exhibit W.: 222; Exhibit X.: 226 & Exhibit Y.: 228.**

73.     On information and belief, on December 26, 2011 AFM Sollitto and Defendant DeMarco entered into the basement of the building for the purpose of allegedly inspecting the electrical panels, however, DeMarco did not examine the electrical panel for the existence of any hardwired fire alarms, did not complete a written report or memorialize the scope or results of the examination.  **See Exhibit M.: 75  & O.: 99.**

74.     On information and belief, neither the Fire Marshall's Office nor the Building Department contacted or notified the plaintiff that her home was being demolished and neither retained any physical evidence for a detailed objective forensic examination relating to the cause and origin of the fire or product failures.

75.     On information and belief, Defendant Ernest Orgera was interviewed by the Stamford Police on January 12, 2012 and January 23, 2012 regarding the fire at the plaintiff's home and the demolition and removal of her property.  **See Exhibit P.: 101-102.**

76.     On information and belief, on the afternoon of December 25, 2011, Defendant DeMarco had a telephone conversation with Defendant Orgera during which DeMarco reported that the plaintiff's home "needed to be boarded up and it should actually be torn down as it was unsafe and posed a danger", that the fire department was "done with the building",  but it does not appear that DeMarco ever stated that there was an emergency or that the home was in imminent danger of collapse.  **See Exhibit P.: 102.**

77.     On information and belief, Defendants Orgera and DeMarco discussed retaining a company to search the plaintiff's house for personal property on December 25, 2011 and would never have suggested that someone enter the home to search for personal belongings if the property was in imminent danger of collapse.

78.     On information and belief, Defendant DeMarco has reported that Defendant Orgera told him that "the owners" wanted the house searched for personal property and that he (DeMarco) handled that aspect by hiring Servpro while volunteering that "no City official was present to supervise the search or recovery of personal property." **See Exhibit M.: 76.**

79.      Pursuant to Stamford Code of Ordinances § C5-30-6 "[t]he Building Official has the authority to demolish an unsafe building or structure or any part thereof only if the owner of such building fails to act "within five (5) days after written notice to do so."

80.     The plaintiff was not given any written or verbal notice that her home was unsafe or going to be demolished following the fire as required by Stamford Code of Ordinances § C5-30-6.

81.     Pursuant to the Connecticut State Building Code § 116.4,  a building official  may take steps to render a building safe up to including demolition when there is imminent danger requiring immediate action and the owner of the building "cannot be located, or refuses or is unable to expeditiously render the premises safe."

82.     When Defendants DeMarco and Orgera decided to demolish the plaintiff's home there was no "imminent danger" requiring "immediate action" as evidenced by, *inter alia*, the consideration of the option of boarding the home, the instructions given to DeMarco by Orgera to search the home, the continued presence of  people going inside the home and its basement after the fire was extinguised, the overall appearance of the home and the inconsistent statements provided by the defendants concerning what actions were to be taken concerning the home.  **See Exhibit M.: 75; Exhibit P: 102 & Exhibit W.: 222-224A & Exhibit X.: 226.**

83.     When Defendants DeMarco and Orgera decided to demolish the plaintiff's home,  the decision was made and carried out pursuant to an established municipal policy in an intentional and arbitrary manner with reckless disregard for the plaintiff's rights, as there was no good faith basis to conclude that the entire home was in imminent danger of collapse or that plaintiff could not be located or would have been unable to promptly mobilize the resources necessary to render the home safe,  particularly in light of the known fact that both Fire and Police personnel had

actual knowledge of the plaintiff's whereabouts and had interviewed the plaintiff incident to their own investigations.

84.     Defendants  DeMarco and Orgera recklessly authorized the demolition of the plaintiff's home along with its contents and the critical and unique evidence required to competently investigate the cause and origin of the fire or establish the reason that installed and activated warning systems failed to operate without notice to the plaintiff or preparation of an inventory, notwithstanding observations by fire personnel noting that certain bedrooms evidenced "little damage" or "very little fire damage."  **See Exhibit J.: 62.**

85.     Demolitions in the State of Connecticut are governed by the State Demolition Code and the regulations promulgated thereunder by the Commissioner of Construction Services which confer upon local municipal building officials the authority to issue demolition permits so long as certain mandatory ministerial acts are fulfilled regarding safety, financial and notice requirements.

86.      Pursuant to Conn. Gen. Stat. § 29-404 Defendant DeMarco as the local building official and Defendant Orgera as the Director of Operations for the City of Stamford were  mandated to administer the ministerial provisions codified in §§ 29-406 - 29-413 of the State Demolition Code.

87.     On information and belief, the ministerial statutory conditions precedent to issuing a demolition permit were ignored or intentionally manipulated when the plaintiff's home was demolished,  as the permit was issued to AMEC by defendant DeMarco on January 10, 2012,

well after the plaintiff's home had been demolished, and the application for the permit was supported by, *inter alia,* a perjurious notarized affidavit stating that the owner authorized the demolition and requested the permit.  **See Exhibit R.: 107-109.**

88.    The Defendants' intentional decision to demolish the plaintiff's home, destroy and seize all of its contents and the unique physical evidence required for all interested and affected parties to conduct a competent objective forensic investigation, without any notice to the plaintiff,  was arbitrary, reckless and represented an extreme departure from known and expected standards of care customarily attendant to post fire investigations resulting in a permanent deprivation and extinguishment of the plaintiff's rights.

89.    On information and belief, Defendant DeMarco prepared and submitted to Defendant Orgera two memoranda dated February 10, 2012 after the Stamford Police commenced an investigation into the demolition of the plaintiff's home.  **See Exhibit S.:111-113.**

90.    On information and belief, Defendant DeMarco never memorialized that he was unable to notify the plaintiff of the decision to demolish her home or that emergency action was required because the plaintiff's home was in imminent danger of collapse prior to the February 10, 2012 memorandum that he created after he was interviewed by the police concerning his role in the demolition.

91.    On information and belief, in addition to all of the personal property contained within the plaintiff's home, the structure itself both before and after its demolition contained numerous

types of salvageable scrap metal, wiring, steel beams and other valuable recyclable products which survived the fire. **See Exhibit YF.: 246-249.**

92.     On information and belief, on or about January 23, 2012, Defendant Orgera advised the Stamford Police that he had a conversation with Defendant DeMarco on the afternoon of December 25, 2011 during which DeMarco told him that he (DeMarco) had decided to have the debris from the plaintiff's home removed. **See Exhibit P.: 102.**

93.     On information and belief, on or about December 28, 2011, Defendant DeMarco told the demolition contractor that Defendant Orgera made the decision to remove the debris from the plaintiff's home.

94.     On or about December 28, 2011, in the absence of exigent circumstances and without a warrant, Defendants Orgera and DeMarco arranged for the removal of the remains from the plaintiff's home to be asported off the property to parts unknown, without notice to the plaintiff or just compensation.

95.     On information and belief, after the materials remaining from the demolition were removed, a large hole remained on the plaintiff's property which, on information and belief, remains as of the filing of this action, requires a safety fence, and belies the contention that the debris was removed for reasons of public safety. **See Exhibit U.: 117 & YE.: 243-245.**

96.     On information and belief, both Defendants DeMarco and Orgera were aware of the monetary salvage potential and evidentiary value of the remains from the plaintiff's home when they arranged for the removal of the materials without a warrant or notice to the plaintiff.

97.     On information and belief, under Defendant Orgera's charge the Office of Operations was responsible for writing municipal policy regarding the disposal of scrap metal in Stamford and prior to the removal of the plaintiff's property in 2011 Defendant Orgera was identified in a report commissioned by the City law department as a  person "running metals" in Stamford and named as a defendant in a federal lawsuit (Docket 3:11-CV-00767) containing allegations regarding the Office of Operations and its handling of  scrap metal.

98.     On information and belief, following the fire and demolition of the plaintiff's property an investigation was initiated by the State's Attorney for the Judicial District of Stamford-Norwalk who concluded, *inter alia*, that his investigation "was hampered to some degree by actions of some City of Stamford officials".  **See Exhibit V.: 121.**

99.     On information and belief, the State's Attorney declined to commence a criminal prosecution following his investigation but made recommendations regarding future cause and origin investigations and demolition practices.  **See Exhibit V.: 121.**

100.    The defendants are liable to the plaintiff for damages resulting from the deprivation of her constitutional rights.

**\* COUNT I \***
**PRE DEMOLITION DUE PROCESS VIOLATIONS**
**42 U.S.C. § 1983**

*PLAINTIFF 'S CLAIM AGAINST  DEFENDANT ROBERT D. DEMARCO FOR*
*DAMAGES RESULTING FROM THE DESTRUCTION OF PROPERTY WITHOUT DUE*
*PROCESS OF LAW*

101.     Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein the allegations set forth in paragraphs 1-100 above.

102.     In December of 2011 when Defendants DeMarco and Defendant Orgera made the decision to demolish the plaintiff's home, Defendant Robert D. DeMarco was acting under color of state law and knew that the plaintiff had a well established constitutionally protected property interest in her home and its contents.

103.     On December 25, 2011, the City of Stamford had within its Code of Ordinances a municipal policy empowering the Building Official to remove any building or structure deemed to be in an unsafe condition if the owner of the building or structure failed to act within five days of written notice to do so.

104.     On December 25, 2011, the Connecticut State Building Code permitted a Building Official to demolish a building if there was imminent danger requiring immediate action only if the owner of the building could not be located, refused or was unable to render the premises safe.

105.     On December 25, 2011 it was clearly established that the Fourteenth Amendment (Article XIV § 1) to the United States Constitution prohibited the state from depriving a person of life,

liberty or property without due process of law and it was objectively unreasonable for Defendant DeMarco to disregard this well established right.

106.    Both the Stamford Code of Ordinances and the Connecticut State Building Code require the Building Official to provide notice to a property owner before demolishing property even in emergency circumstances and this notice provision was clearly established and known to Defendant DeMarco when the plaintiff's home was demolished.

107.    To satisfy due process requirements when a deprivation of property is involved, an individual must be afforded notice or an opportunity for a hearing before the deprivation and due process is denied when a building official arbitrarily or needlessly invokes an emergency procedure to demolish an entire building and thereafter remove its remains without notice to the property owner.

108.    Prior to authorizing the demolition of the plaintiff's home, Defendant DeMarco knew that Stamford police and/or fire officials had interviewed the plaintiff and were utilizing information that she had provided to them in their investigation of the house fire, and he had both the time and ability to notify her of his intended actions prior to the demolition of her home without jeopardizing the public's safety.

109.    Following the fire, there was no emergency or imminent threat requiring the immediate demolition of the plaintiff's entire home, a property  which was set back from the road on a dead end street,  and considering that five deaths had occurred, it was patently obvious that litigation would be probable and no building official of reasonable competence without an ulterior motive

would have pursued the same course of action and ordered the destruction of the home without notice to its owner.

110.    The plaintiff's home and its remaining contents in situ following the fire represented a unique repository of physical evidence, capable of being examined to ascertain the reason that existing warning systems failed and scientifically confirm the cause, origin, and spread of the fire and following the destruction of this evidence there is no post-deprivation remedy that could ever restore the plaintiff to the position she would have been in had she been afforded her due process right to simple notice.

111.    In personally making the determination that there was no electrical cause for the fire and simultaneously orchestrating the immediate, unnecessary and conscious - shocking demolition of the plaintiff's home without notice, Defendant DeMarco arbitrarily exercised unfettered discretion in a reckless manner with the impermissible consequence of concealing the multiple failings of the building department associated with the renovations being performed in the home.

112.    The plaintiff's right to procedural due process is held to be absolute and as a result of the defendant's conduct as more fully described above, the plaintiff is entitled to and hereby demands an award of nominal damages, compensatory damages as established by proof at trial and exemplary damages resulting from the defendant's deliberate and objectively unreasonable violation of her well established Constitutional rights.

## **COUNT II**
## POST DEMOLITION NOTICE VIOLATIONS
### 42 U.S.C. § 1983

### *PLAINTIFF 'S CLAIM AGAINST DEFENDANT ROBERT D. DEMARCO FOR DAMAGES RESULTING FROM POST DEMOLITION REMOVAL OF PROPERTY WITHOUT DUE PROCESS OF LAW*

113.    Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein the allegations set forth in ¶¶ 1-100 & ¶¶ 101-112 Count I.

114.    On December 26, 2011, by 12:00 p.m. the plaintiff's home had been fully demolished and the product of the demolition was on the plaintiff's property inside the remains of the existing foundation.

115.    On December 26, 2011, the demolished home in situ represented a unique repository of physical evidence capable of being cultivated and examined to retrieve  and investigate the reason that existing warning systems failed and other potentially valuable information capable of explaining  the cause, origin and spread of the fire.

116.     On December 26, 2011, the demolished home in situ consisted of construction and demolition by-products, building materials, steel, aluminum, copper and other items having an economic value in the recycling market as well as every other personal item belonging to the plaintiff such as silver flatware, jewelry and all of the other items that a person accumulates during life that were in the home prior to the fire and demolition.

117.    On December 26, 2011, the plaintiff had a constitutionally protected property right in the remains of her demolished home and in each and every civil cause of action relating to the cause of or damage resulting from the fire for which she would have been entitled to seek redress and recourse in the courts.

118.    On December 26, 2011, the plaintiff's home was not in imminent danger of collapse, the remnants presented no imminent danger and there were no exigent circumstances that prevented Defendant DeMarco from notifying the plaintiff that she had to remove her property or otherwise render the premises safe or the City would act in her stead.

119.    Defendant DeMarco has stated that Defendant Orgera made the decision to have the plaintiff's property removed and Defendant Orgera has stated that Defendant Demarco made the decision to have the plaintiff's property removed, but neither defendant gave the plaintiff notice or the opportunity to safeguard her property as required by law.

120.    On December 28th and 29th 2011, in the absence of exigent circumstances and without statutorily required notice or just compensation to the plaintiff, the unique repository of physical evidence constituting the remains of the plaintiff's home as well as the clearly evident and economically valuable scrap metal was removed to parts unknown pursuant to an established municipal policy or policies.

121.    In orchestrating the removal of the plaintiff's property Defendant DeMarco arbitrarily exercised unfettered discretion in a reckless and wanton manner with the impermissible

consequence of depriving the plaintiff of constitutionally protected property rights without due process of law and has caused harm for which no post deprivation remedy will suffice.

122.    The plaintiff's right to procedural due process is held to be absolute and as a result of the defendant's conduct as more fully described above, the plaintiff is entitled to and hereby demands an award of nominal damages, compensatory damages as established by proof at trial and exemplary damages resulting from the defendant's deliberate and objectively unreasonable violation of her well established Constitutional rights.

### \*\*\* COUNT III \*\*\*
### FOURTH AMENDMENT VIOLATION
### 42 U.S.C. § 1983

### PLAINTIFF 'S CLAIM AGAINST DEFENDANT ROBERT D. DEMARCO FOR DAMAGES RESULTING FROM UNLAWFUL SEIZURE

123.    Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein the allegations set forth in ¶¶ 1-100 & ¶¶ 101-112 of Count I & ¶¶ 113-122 of Count II.

124.    The plaintiff had a well established constitutionally protected property interest in her home, its contents and the remains of her home before and following its demolition and removal on December 28, 2011 including, *inter alia*, any cause of action relating to the cause of the fire or the failure of warning systems.

125.    While acting under color of state law pursuant to an established municipal policy, Defendant DeMarco engaged in a meaningful interference with the plaintiff's possessory

interests in her property when he ordered her home demolished and subsequently removed the physical remains.

126.    The Fourth Amendment to the United States Constitution made applicable to the States through the Fourteenth Amendment mandates protection of individuals against unreasonable searches and seizures.

127.    In the present case while acting under color of state law, Defendant DeMarco executed an unreasonable seizure when he ordered the demolition of the plaintiff's home without notice and again days later when he permanently dispossessed the plaintiff of her property and personal belongings without a warrant in the absence of exigent circumstances.

128.    When he seized and subsequently orchestrated the permanent elimination and removal of the entire field of original and irreplaceable evidence necessary for a competent examiner to explain or confirm the cause of the fire and reason for failed safety equipment, while permitting those he invited to the task to profit from the plaintiff's personal possessions within days of the deaths of her children,   Defendant DeMarco engaged in an unreasonable, arbitrary and oppressive conscious shocking course of conduct in complete derogation of the plaintiff's Fourth Amendment rights.

129.    The plaintiff is entitled to and hereby demands an award of nominal damages, compensatory damages as established by proof at trial and exemplary damages resulting from the defendant's deliberate and objectively unreasonable violation of her well established Constitutional rights.

**\*\*\* <u>COUNT IV</u> \*\*\***
**<u>DENIAL OF EQUAL PROTECTION</u>**
**42 U.S.C. § 1983**


*<u>PLAINTIFF 'S CLAIM AGAINST DEFENDANT ROBERT D. DEMARCO FOR DENIAL</u>*
*<u>OF EQUAL PROTECTION RIGHTS</u>*


130.    Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein

the allegations set forth in ¶¶ 1-100  & ¶¶ 101-112 of Count I & ¶¶ 113-122 of Count II & ¶¶

123-129 of Count III.


131.    The Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution (U.S. Const. amend. XIV) prohibits the disparate application of laws to similarly

situated individuals.


132.    The manner in which Defendant DeMarco ordered the demolition of the plaintiff's home

and permitted the removal of her personal property deprived her of the equal protection of the

law to which she was entitled.


133.    Defendant DeMarco's office had been responsible for the electrical inspections in the

plaintiff's home which noted and documented fire and draft stop issues during each electrical

inspection and after he himself conducted the final electrical inspection in which he admittedly

did not examine for the existence of any hard-wired fire alarms he ordered the building

immediately demolished.

134.    Defendant DeMarco permitted the plaintiff's home to be demolished without a properly issued demolition permit as required by law and failed to safeguard the plaintiff's personal property or the public during or after the demolition process specifically noting that "no City official was present to supervise the search or recovery of [the plaintiff's] personal property."

135.    Defendant DeMarco arbitrarily ordered the removal of the remains of the plaintiff's home and permitted those that he allowed to demolish the home without a permit to engage in the unfettered asportation of the plaintiff's property, evidence and other personal belongings.

136.    Without any rational basis, Defendant DeMarco arbitrarily and intentionally disregarded all protocol and treated the plaintiff differently from other similarly situated individuals in Stamford who suffered property damage as a result of a fire by, *inter alia*, immediately ordering her home demolished without regard to her belongings, permitting the demolition without a permit, failing to notify the plaintiff of his intended actions, allowing others to go onto the property allegedly without supervision, permitting her personal property with known economic value to be carted away without regard to the plaintiff's rights and preventing the plaintiff from determining the cause of the fire or discovering other contributing factors, including the extent of the deficiencies in the inspections that were done under his charge.

137.    The plaintiff is entitled to and hereby demands an award of nominal damages, compensatory damages as established by proof at trial and exemplary damages resulting from the defendant's deliberate and objectively unreasonable violation of her well established Constitutional rights.

**\*\*\* <u>COUNT V</u> \*\*\***

<u>**PRE DEMOLITION DUE PROCESS VIOLATIONS**</u>
<u>**42 U.S.C. § 1983**</u>

<u>***PLAINTIFF 'S CLAIM AGAINST DEFENDANT ERNEST ORGERA FOR DAMAGES
RESULTING FROM THE DESTRUCTION OF PROPERTY WITHOUT DUE PROCESS
OF LAW***</u>

138.    Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein

the allegations set forth in ¶¶ 1-100 & ¶¶ 101-112 Count I.


139.    In December of 2011, the Defendant Ernest Orgera was the Director of Operations and

the head of the Office of Operations for the City of Stamford while Defendant Robert DeMarco

was the City of Stamford Building Official who under the advice, instruction and direction of

Defendant Orgera issued building and demolition permits.


140.    In December of 2011 Defendant Orgera personally participated in the decision to

demolish the plaintiff's home and subsequently remove her property without notice or just

compensation as previously alleged and also had supervisory responsibility for the actions and

decisions of Defendant DeMarco pursuant to Stamford Code of Ordinances C5-30-6.


141.    In December of 2011 when Defendant DeMarco and Defendant Orgera made the decision

to demolish the plaintiff's home and remove her property, Defendant Orgera was acting under

color of state law and knew that the plaintiff had a constitutionally protected property interest in

her home and its contents.

142.    In December 2011, Defendant Orgera's actions caused the plaintiff to suffer a deprivation of her constitutional rights as more fully described above, and the plaintiff is entitled to and hereby demands an award of nominal damages, compensatory damages as established by proof at trial and exemplary damages resulting from the defendant's deliberate and objectively unreasonable violation of her well established Constitutional rights.

## **COUNT VI**
## POST DEMOLITION NOTICE VIOLATIONS
### 42 U.S.C. § 1983

### PLAINTIFF 'S CLAIM AGAINST DEFENDANT ERNEST ORGERA FOR DAMAGES RESULTING FROM POST DEMOLITION  REMOVAL OF PROPERTY WITHOUT DUE PROCESS OF LAW

143.    Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein the allegations set forth in ¶¶ 1-100 & ¶¶ 113-120 of Count II.

144.    In December of 2011, the Defendant Ernest Orgera was the Director of Operations and the head of the Office of Operations for the City of Stamford while Defendant Robert DeMarco was the City of Stamford Building Official who under the advice, instruction and direction of Defendant Orgera issued building and demolition permits.

145.     In December of 2011 Defendant Orgera personally participated in the decision to remove the plaintiff's property from her home without notice or just compensation as previously alleged and also had supervisory responsibility for the actions and decisions of Defendant DeMarco pursuant to Stamford Code of Ordinances C5-30-6.

146.    In December of 2011 when Defendant DeMarco and Defendant Orgera made the decision to remove the plaintiff's property Defendant Orgera was acting under color of state law and knew that the plaintiff had a constitutionally protected property interest in the remains of her home which included construction and demolition by-products, building materials, steel, aluminum, copper and other items having an economic value in the recycling market as well as every other personal item belonging to the plaintiff such as silver flatware, jewelry and all of the other items that a person accumulates during life that were in the home prior to the fire and demolition.

147.    On information and belief, under Defendant Orgera's charge the Office of Operations was responsible for writing municipal policy regarding the disposal of scrap metal in Stamford and prior to the removal of the plaintiff's property in 2011 Defendant Orgera was identified in a report commissioned by the City law department as a  person "running metals" in Stamford and named as a defendant in a federal lawsuit (docket 3:11-cv-00767) containing allegations regarding the Office of Operations and its handling of  scrap metal.

148.    In December 2011, Defendant Orgera's actions caused the plaintiff to suffer a deprivation of her constitutional rights as more fully described above including the loss of property, and the plaintiff is entitled to and hereby demands an award of nominal damages, compensatory damages as established by proof at trial and exemplary damages resulting from the defendant's deliberate and objectively unreasonable violation of her Constitutional rights.

*** <u>COUNT VII</u> ***
**FOURTH AMENDMENT VIOLATION**
**42 U.S.C. § 1983**

<u>*PLAINTIFF 'S CLAIM AGAINST DEFENDANT ERNEST ORGERA FOR DAMAGES RESULTING FROM UNLAWFUL SEIZURE*</u>

149.    Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein the allegations set forth in ¶¶ 1-100 & ¶¶ 123-129 of Count III & ¶¶ 146 & 147 of Count VI.

150.    In December of 2011, the Defendant Ernest Orgera was the Director of Operations and the head of the Office of Operations for the City of Stamford while Defendant Robert DeMarco was the City of Stamford Building Official who under the advice, instruction and direction of Defendant Orgera issued building and demolition permits.

151.    In December of 2011 Defendant Orgera personally participated in the decision to remove the plaintiff's property from her home without notice or just compensation as previously alleged and also had supervisory responsibility for the actions and decisions of Defendant DeMarco pursuant to Stamford Code of Ordinances C5-30-6.

152.    In December 2011, Defendant Orgera's actions caused the plaintiff to suffer a deprivation of her constitutional rights as more fully described above including the loss of property, and the plaintiff is entitled to and hereby demands an award of nominal damages, compensatory damages as established by proof at trial and exemplary damages resulting from the defendant's deliberate and objectively unreasonable violation of her Constitutional rights.

*** <u>COUNT VIII</u> ***
<u>DENIAL OF EQUAL PROTECTION</u>
<u>42 U.S.C. § 1983</u>

<u>*PLAINTIFF'S CLAIM AGAINST DEFENDANT ERNEST ORGERA FOR DENIAL OF*</u>
<u>*EQUAL PROTECTION RIGHTS*</u>

153.    Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein the allegations set forth in ¶¶ 1-100 & ¶¶ 130-137 of Count IV.


154.    In December of 2011, the Defendant Ernest Orgera was the Director of Operations and the head of the Office of Operations for the City of Stamford while Defendant Robert DeMarco was the City of Stamford Building Official who under the advice, instruction and direction of Defendant Orgera issued building and demolition permits.


155.    In December of 2011 Defendant Orgera personally participated in the decision to remove the plaintiff's property from her home without notice or just compensation as previously alleged and also had supervisory responsibility for the actions and decisions of Defendant DeMarco pursuant to Stamford Code of Ordinances C5-30-6.


156.    In authorizing the demolition of the plaintiff's home without requiring a demolition permit and in failing to follow each of the conditions precedent to a demolition outlined in the state demolition code over which Defendant Orgera had ultimate supervisory responsibility in the City of Stamford during 2011, Defendant Orgera arbitrarily and intentionally subjected the plaintiff to discriminatory treatment without any rational basis resulting in the irretrievable loss of her property and unjustified denial of her constitutional rights.

157.    In December 2011, Defendant Orgera's actions caused the plaintiff to suffer a deprivation of her constitutional rights as more fully described above including the loss of property, and the plaintiff is entitled to and hereby demands an award of nominal damages, compensatory damages as established by proof at trial and exemplary damages resulting from the defendant's deliberate and objectively unreasonable violation of her well established Constitutional rights.

*** <u>COUNT IX</u> ***
**42 U.S.C. § 1983**

***<u>PLAINTIFF'S CLAIM AGAINST THE DEFENDANT CITY OF STAMFORD FOR VIOLATION OF HER WELL ESTABLISHED RIGHTS UNDER U.S. CONST. amend. IV & XIV PURSUANT TO 42 U.S.C. § 1983</u>***

158.    Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein the allegations set forth in ¶¶ 1-100 & ¶¶ 101-157 of Counts I - VIII.

159.     Defendant City of Stamford is a Municipal Corporation duly organized and existing under the laws of the State of Connecticut and conducts its activities from Stamford Government Center located at 888 Washington Blvd., Stamford, Connecticut.

160.    The Office of Operations is an agency within the City of Stamford that is responsible for the administration, supervision and performance of all municipal functions pertaining to public works, traffic, parks and recreation, planning, zoning and environmental protection.

161.    Within the Office of Operations in 2011 there existed the position of the Building Official who, under the advice, instruction and direction of the Director of Operations, was responsible

for, *inter alia*, the issuance of building and demolition permits, as well as local enforcement of the State Building and Demolition Code.

162.    In December 2011, Defendant Ernest Orgera was the Director of Operations for the City of Stamford and Defendant Robert D. DeMarco was the duly appointed Building Official.

163.    In December of 2011, the City of Stamford had an official written municipal policy which included section C5-30-6 relating to the Building Official's authority to mandate the demolition of unsafe buildings if the owners thereof failed to act within 5 days after receiving written notice to do so and this section, along with Connecticut State Building Code § 116, was administered on behalf of the City by Defendant DeMarco under the advice, instruction and direction of Defendant Orgera.

165.    Within the City of Stamford the Director of Operations exercised final authority over significant matters involving discretion pursuant to the duties ascribed by § C5-30-1 of the Municipal Code of Ordinances, including the practice of how to dispose of scrap metal and in 2011 the official policy, practice and custom of the City permitted the Office of Operations to dispose of scrap metal for cash and allocate the proceeds therefrom.

166.    The demolition of the plaintiff's home and the unreasonable seizure of her property, including all of the remains from the demolition constituting the entirety of the evidence from the fire and other salvageable scrap metals with a known economic value, was, on information and belief, carried out under color of state law pursuant to the written and unwritten policies, practices and customs of the City of Stamford and the Office of Operations.

167.    The actions of the City and the individual defendants caused the plaintiff to suffer a deprivation of her constitutional rights as more fully described above, including the loss of property, and the plaintiff is entitled to and hereby demands an award of nominal damages, compensatory damages as established by proof at trial and exemplary damages as permitted by law resulting from the deliberate and objectively unreasonable violation of  her well established Constitutional rights.

## *** COUNT X ***
### 28 U.S.C. 2201(a)

### *PLAINTIFF'S CLAIM AGAINST THE DEFENDANTS DEMARCO & ORGERA FOR DELARATORY RELIEF*

168.    Pursuant to Fed. R. Civ. P. 10(c), the plaintiff adopts by reference and incorporates herein the allegations set forth in ¶¶ 1-100, ¶¶ 123-129 of Counts III and 149-152 of Count VII.

169.    The Fourth Amendment to the United States Constitution provides protection to individuals against unreasonable searches and seizures.

170.    Under the Fourth Amendment a seizure occurs when there is a meaningful interference with a person's possessory interest in her  property.

171.    The plaintiff had a protected property interest in her home, its contents, the remains of the demolition materials and any prospective cause of action that could have been established based on an examination of the evidence remaining after the fire and demolition.

172.   The demolition of the plaintiff's home and the permanent removal and seizure of the remains has resulted in a meaningful interference with the plaintiff's possessory interests in her property under color of state law and an actual controversy exists in the instant case concerning the reasonableness of the defendants' actions as carried out in December of 2011.

173.   In circumstances where a violation of the Fourth Amendment is alleged an independent review of the reasonableness of the seizure is required and the determination of whether the seizure was reasonable will be determined by the court after carefully balancing the interests of the government with those of the private citizen.

174.   On December 28, 2011, three days following the deaths of her parents and three daughters, the plaintiff had a far greater interest in retaining the evidence from the fire for an objective competent forensic examination than the City had for removing her property from the site.

175.   The plaintiff maintains that the Defendants' seizure of her property was unreasonable in light of all the circumstances and calls upon this Honorable Court pursuant to 28 U.S.C. 2201(a) to declare the same.

**Wherefore, the plaintiff, Madonna Badger, respectfully requests that this Honorable Court:**

**1.      Enter Judgment following a trial by jury in favor of the plaintiff against the defendant Robert D. DeMarco for nominal damages, compensatory damages as established**

by proof at trial and exemplary damages resulting from the deliberate and objectively unreasonable violation of her well established Constitutional rights.

2.    Enter Judgment following a trial by jury in favor of the plaintiff against the defendant Ernest Orgera for nominal damages, compensatory damages as established by proof at trial and exemplary damages resulting from the deliberate and objectively unreasonable violation of her well established Constitutional rights.

3.    Enter Judgment following a trial by jury in favor of the plaintiff against the defendant City of Stamford for nominal and compensatory damages as established by proof at trial and exemplary damages as permitted by law caused by the unconstitutional enforcement of the City's official policies, practices and customs resulting in the deliberate and objectively unreasonable violation of  the plaintiff's well established Constitutional rights.

4.    Enter a declaratory judgment adjudicating that the unreasonable seizure of the plaintiff's property by the defendants violated the plaintiff's well established rights under the Fourth Amendment to the United States Constitution;

5.    Award the plaintiff legal fees  and costs  pursuant to 42 U.S.C. § 1988  as well as any other relief  deemed just and appropriate by this Honorable Court.

**Respectfully Submitted,**

_/s/ Frank C. Corso_____
**Frank C. Corso, Esq.**
**(MA BBO#545552)**
**Counsel for the Plaintiff**
_Pending Pro Hac Vice Approval_
**Corso Law, LLC**
**492 Winthrop Street, Suite 5**
**Rehoboth, MA 02769**
**Tel:  (774) 901-2677**
**Fax:  (774) 901-2678**
**Cell:  (617) 216-9036**
**fcc@corsolaw.com**

_/s/ Frank A. Manfredi_____
**Frank A. Manfredi, Esq.**
**(CT Juris#035625)**
**Counsel for the Plaintiff**
**Cotter, Greenfield, Manfredi & Lenes**
**34 Courthouse Square, 3rd Floor**
**Norwich, CT 06360**
**Tel:  (860) 887-1695**
**Fax:  (860) 889-4350**
**fmanfredi.cgml@att.net**

**Dated: 1/3/13**